Wendy J. Olson, ISB No. 7634
*wendy.olson@stoel.com*
STOEL RIVES LLP
101 S Capitol Boulevard, Suite 1900
Boise, ID 83702
Telephone: 208.389.9000
Facsimile: 208.389.9040

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ST. LUKE'S HEALTH SYSTEM, LTD. and ST. LUKE'S REGIONAL MEDICAL CENTER, LTD.,<br><br>                 Plaintiffs,<br><br>   v.<br><br>CORIZON, LLC f/k/a CORRECTIONAL MEDICAL SYSTEMS, INC., a Missouri limited liability company; and CORIZON HEALTH, INC., a Delaware Corporation,<br><br>                 Defendants. | Case No.<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

COMES NOW Plaintiffs St. Luke's Health System, Ltd. and St. Luke's Regional

Medical Center, Ltd. (collectively "St. Luke's"), through its counsel of record, Stoel Rives LLP,

and for causes of action and claims for relief against Defendants Corizon, LLC f/k/a Correctional

Medical Systems, Inc. and Corizon Health, Inc. (collectively "Corizon"), and complain and

allege as follows:

## I.  PARTIES

1.      St. Luke's Health System, Ltd. is an Idaho nonprofit corporation headquartered in Ada County, Idaho, that operates hospitals, clinics, and other health care facilities across southwestern Idaho and eastern Oregon.  St. Luke's Regional Medical Center, Ltd. is an Idaho nonprofit corporation with its headquarters in Ada County, Idaho, that operates hospitals in Boise, Meridian, and Mountain Home, Idaho.  St. Luke's Health System, Ltd. is the sole member of St. Luke's Regional Medical Center, Ltd.

2.      Corizon, LLC f/k/a Correctional Medical Systems, Inc. is a for-profit limited liability company that does business in the State of Idaho but is incorporated under the laws of the State of Missouri and has its principal place of business in Williamson County, Tennessee. Corizon, LLC is a wholly owned subsidiary of Corizon Health, Inc., which does business in the State of Idaho but is a Delaware corporation headquartered in Williamson County, Tennessee.

## II.  JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction over this matter under 28 U.S.C. § 1332(a) because there is complete diversity of citizenship, and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

4.      This Court has personal jurisdiction over Corizon, as Corizon conducts business within the state of Idaho.

5.      Venue is proper pursuant to 28 U.S.C. § 1391(b)(2), as a substantial part of the events or omissions giving rise to the claim occurred in Ada County, Idaho.

## III.  FACTUAL BACKGROUND

A.      **Corizon's Unilateral and Improper Shift to Paying Medicaid Rates for Health Care Services Provided to Inmates**

6.      On information and belief, Corizon is a party to a medical services contract with

the Idaho Department of Correction ("IDOC"), effective January 1, 2014, under which Corizon

is obligated to provide or pay for medically necessary health care services for certain inmates

and detainees in the custody of IDOC.

7.      Since on or about January 1, 2011, St. Luke's and Corizon had an agreement

regarding the provision of health care services to certain inmates and detainees in the custody of

IDOC.

8.      Pursuant to that 2011 agreement, Corizon committed to pay St. Luke's at 76

percent of billed charges for health care services provided by St. Luke's to certain inmates and

detainees in the custody of IDOC.

9.      Notwithstanding the 2011 agreement, Corizon often improperly refused to pay St.

Luke's for services rendered or delayed payment for those services.   Nonetheless, from on or

about January 1, 2011 through on or about June 30, 2014, when Corizon did pay St. Luke's, it

did so generally at the agreed-upon amount of 76 percent of billed charges.

10.     On or about May 21, 2014, Corizon informed St. Luke's that beginning on July 1,

2014, and despite the 2011 agreement, it would begin reimbursing St. Luke's for health care

services to certain inmates and detainees in the custody of IDOC at the substantially lower rates

paid by the Medicaid program.  Corizon informed St. Luke's that it interpreted Idaho Code § 20-

237B to require St. Luke's to accept reimbursement at the lower, Medicaid rates.  Corizon stated

that any agreement that held to the contrary was thereby "superseded."

11.     St. Luke's rejected Corizon's unilateral statement and informed Corizon that it

expected Corizon to continue reimbursing St. Luke's for health care services to certain inmates

and detainees in the custody of IDOC at the rates agreed upon by Corizon and St. Luke's in

January 2011.  When Corizon refused to withdraw its demand that St. Luke's accept Medicaid

COMPLAINT AND DEMAND FOR JURY TRIAL - 3

rates, St. Luke's made clear by letter dated March 25, 2015, that it would expect Corizon to pay full billed charges, *i.e.*, not the discounted rates agreed upon in 2011, for any inpatient or outpatient services provided to inmates for which Corizon was financially responsible.

12.     Despite Corizon's knowledge that any health care provided by St. Luke's to inmates at Corizon's request would be charged at rates other than the Medicaid rates, Corizon continued from July 1, 2014, forward to request and secure health care services for inmates from St. Luke's.

13.     For the health care provided by St. Luke's at Corizon's request between July 1, 2014 and March 26, 2018, Corizon, over St. Luke's repeated objection, refused to pay St. Luke's full billed charges, and asserted that it should only have to pay the Medicaid rate of reimbursement.  With respect to such health care, when Corizon has made payments, it has done so at most at what it apparently regards as Medicaid rates, and it has failed to pay at all on many valid claims.  Even then, Corizon's payments were made months after they were due to St. Luke's.

14.     St. Luke's has never agreed to provide health care services to inmates at Corizon's requested Medicaid rates, and has specifically rejected such proposal on numerous occasions.

15.     Corizon's only basis for insisting that it was entitled to pay St. Luke's at lower, Medicaid rates is its reading of Idaho Code § 20-237B in effect at the time the care at issue was provided.  However, the Idaho Supreme Court recently rejected Corizon's statutory interpretation in an opinion on a certified question of law from the United States District Court for the District of Idaho.  *In re Decision on Joint Motion to Certify Question of Law to the Idaho Supreme Court and Order of Certification 45187*, 2018 Opinion No. 8, Idaho Supreme Court,

January 17, 2018. The Idaho Supreme Court held that the "terms 'state board of correction' as used in Idaho Code Section 20-237B(1) and 'department of correction' as used in Idaho Code Section 20-237B(2)" do not include privatized correctional medical providers under contract with the IDOC, such as Corizon.

16.     Corizon's ongoing securing of health care for inmates from St. Luke's from July 1, 2014, through March 26, 2018, despite St. Luke's rejection of the use of the Medicaid rate and the inapplicability of Idaho Code § 20-237B for that time period, constitutes Corizon's acceptance of St. Luke's full billed charges for the provision of health care for IDOC inmates.

17.     At present, St. Luke's believes that the underpayment by Corizon for medical care rendered by St. Luke's based on Corizon's rejected assertion that it can reimburse at Medicaid rates, is at least $12,611,349, as well as ongoing interest accruing thereon, which currently totals at least $3,217,409.

**B.     Corizon's Breach of and Failure to Timely Pay Health Care Services Provided Under Single Case Agreements**

18.     Between on or about June 8, 2015, and on or about January 18, 2017, St. Luke's separately entered into four single case agreements with Corizon through which St. Luke's agreed to provide specific, high-cost bone marrow transplant services to a named inmate or detainee in the custody of IDOC. These single case agreements were separate from the general health care services provided by St. Luke's, at the request of Corizon, to certain inmates and detainees in the custody of IDOC. They were designed to ensure that, for these particularly high-cost health care services, Corizon knew the terms of reimbursement, including that St. Luke's expected timely payment and that the reimbursement rate was not the Medicaid rate.

19.     In each of the single case agreements, Corizon agreed to reimburse St. Luke's at specific, negotiated rates within 30 days of receiving a bill for such health care services. Corizon

COMPLAINT AND DEMAND FOR JURY TRIAL - 5
97469434.1 0048059-00008

further agreed that if it did not reimburse St. Luke's within 30 days, it forfeited the negotiated

rates and would pay St. Luke's at St. Luke's full billed charges.

20.     On or about June 8, 2015, St. Luke's and Corizon entered into a single case

agreement with respect to inmate A,[1] under which Corizon agreed to reimburse St. Luke's at the

lesser of the transplant case rate or 78% of the billed charges for the transplant services, and

agreed to other specific terms for additional services.  Corizon further agreed to reimburse St.

Luke's within 30 days of St. Luke's submitting such charges to Corizon, or forfeit the negotiated

rates and pay St. Luke's its full billed charges.

21.     On or about February 1, 2016, St. Luke's and Corizon entered into a single case

agreement with respect to inmate B under which Corizon agreed to reimburse St. Luke's at the

lesser of the transplant case rate or 78% of the billed charges for the transplant services, and

agreed to other specific terms for additional services.  Corizon further agreed to reimburse St.

Luke's within 30 days of St. Luke's submitting such charges to Corizon, or forfeit the negotiated

rates and pay St. Luke's its full billed charges.

22.     On or about November 9, 2016, St. Luke's and Corizon entered into a single case

agreement with respect to inmate C under which Corizon agreed to reimburse St. Luke's at the

lesser of the transplant case rate or 78% of the billed charges for the transplant services, and

agreed to other specific terms for additional services.  Corizon further agreed to reimburse St.

Luke's within 30 days of St. Luke's submitting such charges to Corizon, or forfeit the negotiated

rates and pay St. Luke's its full billed charges.

23.     On or about December 23, 2016, St. Luke's and Corizon entered into a single case

---

[1] The four individual inmates for whom the single case agreements were entered into by Corizon and St. Luke's are identified in this complaint as Inmates A, B, C and D to protect their privacy and the privacy of their personal health information.  Their true identities are known to the parties.  St. Luke's anticipates that information will be exchanged about them in discovery pursuant to a protective order.

COMPLAINT AND DEMAND FOR JURY TRIAL - 6

agreement with respect to inmate D under which Corizon agreed to reimburse St. Luke's at the lesser of the transplant case rate or 78% of the billed charges for the transplant services, and agreed to other specific terms for additional services.  Corizon further agreed to reimburse St. Luke's within 30 days of St. Luke's submitting such charges to Corizon, or forfeit the negotiated rates and pay St. Luke's its full billed charges.

24.     Corizon did not pay in a timely fashion on any of the four single case agreements. In addition, when Corizon finally did pay well after more than 30 days had passed since being billed for the health care services identified in the single case agreements, Corizon did not pay at the contractually set full billed charges.

25.     At present, St. Luke's believes that the underpayment by Corizon for medical care rendered by St. Luke's under the single case agreements for inmates A, B, C, and D is at least $644,541, as well as ongoing interest accruing thereon, which currently totals at least $114,654.

## IV.  FIRST CLAIM FOR RELIEF
### (Unjust Enrichment)

26.     St. Luke's incorporates all previous allegations as though fully set forth herein.

27.     St. Luke's conferred benefits on Corizon by providing health care services to certain inmates and detainees in the custody of the IDOC, as directed by Corizon.

28.     Corizon retained these benefits, and continues to do so.

29.     These services were not provided gratuitously, and it would be unfair and unjust for Corizon to retain the amounts due and owing for health care services provided by St. Luke's to certain inmates and detainees of IDOC.

30.     As a direct and proximate result of Corizon's retention of these benefits, both past and ongoing, without full payment, St. Luke's has been damaged by an amount to be determined by a jury at trial, but otherwise significantly in excess of $75,000.

## V.  SECOND CLAIM FOR RELIEF
### (Quantum Meruit)

31.     St. Luke's incorporates all previous allegations as though fully set forth herein.

32.     Corizon's conduct in seeking the provision of health care services provided by St. Luke's implies a request by Corizon for performance by St. Luke's.

33.     Corizon's conduct in seeking the provision of health care services provided by St. Luke's implies a promise by Corizon to compensate St. Luke's for such performance.

34.     St. Luke's performed as requested.

35.     St. Luke's is entitled to recovery for the reasonable value of the services rendered, for which Corizon has not made full payment.

36.     As a direct and proximate result of Corizon's failure to make full payment for the reasonable value of the services rendered, St. Luke's has been damaged by an amount to be determined by a jury at trial, but otherwise significantly in excess of $75,000.

## VI.  THIRD CLAIM FOR RELIEF
### (Breach of Contract – Inmate A)

37.     St. Luke's incorporates all previous allegations as though fully set forth herein.

38.     St. Luke's and Corizon entered into a valid, binding contract under which Corizon agreed to pay St. Luke's for transplant and other services provided to inmate A.  The agreement allowed Corizon to pay a discounted rate if it did so within 30 days of submission of the charges, but committed Corizon to paying full billed charges if payment was not made within that time frame.

39.     St. Luke's fully performed the medical services required by the single case agreement for inmate A.

40.     Corizon failed to pay St. Luke's within 30 days of St. Luke's submitting charges to Corizon, and failed to pay the full amount due and owing.

41.     St. Luke's has suffered damages as a direct and proximate result of Corizon's breach in an amount to be proven at trial, including but not limited to damages attributable to nonpayment and delay in the receipt of reimbursement for health care services rendered, costs, and attorney's fees.

## VII.  FOURTH CLAIM FOR RELIEF
### (Breach of Contract - Inmate B)

42.     St. Luke's incorporates all previous allegations as though fully set forth herein.

43.     St. Luke's and Corizon entered into a valid, binding contract under which Corizon agreed to pay St. Luke's for transplant and other services provided to inmate B.  The agreement allowed Corizon to pay a discounted rate if it did so within 30 days of submission of the charges, but committed Corizon to paying full billed charges if payment was not made within that time frame.

44.     St. Luke's fully performed the medical services required by the single case agreement.

45.     Corizon failed to pay St. Luke's within 30 days of St. Luke's submitting charges to Corizon, and failed to pay the full amount due and owing.

46.     St. Luke's has suffered damages as a direct and proximate result of Corizon's breach in an amount to be proven at trial, including but not limited to damages attributable to nonpayment and delay in the receipt of reimbursement for health care services rendered, costs, and attorney's fees.

## VIII.  FIFTH CLAIM FOR RELIEF
### (Breach of Contract - Inmate C)

47.     St. Luke's incorporates all previous allegations as though fully set forth herein.

48.     St. Luke's and Corizon entered into a valid, binding contract under which Corizon agreed to pay St. Luke's for transplant and other services provided to inmate C.  The agreement allowed Corizon to pay a discounted rate if it did so within 30 days of submission of the charges, but committed Corizon to paying full billed charges if payment was not made within that time frame.

49.     St. Luke's fully performed the medical services required by the single case agreement.

50.     Corizon failed to pay St. Luke's within 30 days of St. Luke's submitting charges to Corizon, and failed to pay the full amount due and owing.

51.     St. Luke's has suffered damages as a direct and proximate result of Corizon's breach in an amount to be proven at trial, including but not limited to damages attributable to nonpayment and delay in the receipt of reimbursement for health care services rendered, costs, and attorney's fees.

## IX. SIXTH CLAIM FOR RELIEF
### (Breach of Contract - Inmate D)

52.     St. Luke's incorporates all previous allegations as though fully set forth herein.

53.     St. Luke's and Corizon entered into a valid, binding contract under which Corizon agreed to pay St. Luke's for transplant and other services provided to inmate D.  The agreement allowed Corizon to pay a discounted rate if it did so within 30 days of submission of the charges,

but committed Corizon to paying full billed charges if payment was not made within that time frame.

54.     St. Luke's fully performed the medical services required by the single case agreement.

55.     Corizon failed to pay St. Luke's within 30 days of St. Luke's submitting charges to Corizon, and failed to pay the full amount due and owing.

56.     St. Luke's has suffered damages as a direct and proximate result of Corizon's breach in an amount to be proven at trial, including but not limited to damages attributable to nonpayment and delay in the receipt of reimbursement for health care services rendered, costs, and attorney's fees.

## X.  ATTORNEYS' FEES

57.     As a result of the conduct of Corizon, St. Luke's has been required to retain the services of Stoel Rives LLP.  St. Luke's requests that it be reimbursed for all reasonable attorneys' fees and costs as permitted under Idaho law, including but not limited to Idaho Code §§ 12-120(3), 12-121, 12-123, and Federal Rule of Civil Procedure 54.

## XI. DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury on all issues so triable pursuant to Federal Rule of Civil Procedure 38.

## XII.  PRAYER FOR RELIEF

WHEREFORE, St. Luke's prays for judgment against Corizon as follows:

1.  For compensatory damages in an amount to be proved at trial;

2.  Attorneys' fees, costs, and disbursements incurred herein;

3.  For prejudgment interest pursuant to Idaho Code § 28-22-104;

4.  For post judgment interest pursuant to 28 U.S.C. § 1961; and

5.  All such other relief as the Court deems just and equitable.

DATED:  June 28, 2018.

STOEL RIVES LLP


 /s/ Wendy J. Olson
Wendy J. Olson

Attorneys for Plaintiffs